UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHONDEL LARKIN,

        Petitioner,

    v.

D. DAVEY,

        Respondent.

No.  2:14-cv-2497 TLN GGH

ORDER AND FINDINGS AND RECOMMENDATIONS

I.    INTRODUCTION

    Petitioner, a state prisoner proceeding pro se, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges, on due process grounds, a prison rules violation report ("RVR") following a prison disciplinary conviction on the charge of obstructing a peace officer's duties by refusing to accept his assigned housing.  Respondent has filed an answer and petitioner has filed a traverse.  Also before the undersigned is petitioner's motion for leave to amend his petition.  (ECF No. 16.)  Upon careful consideration of the record and the applicable law, the undersigned now issues findings and recommendations that the petition be denied and orders petitioner's motion for leave to amend his federal petition denied.

/ / /

/ / /

/ / /

1

1    II.      BACKGROUND

2            According to the RVR, on May 2, 2013, Correctional Officer Villasenor approached a cell

3    occupied by petitioner.  ECF No. 10-1 at 31.  Villasenor explained that petitioner would have a

4    new cellmate. Id.  He also noted that the new cellmate was compatible.  Id.  Thereafter,

5    Villasenor ordered petitioner to accept this new cellmate.  Id.  Petitioner refused stating, "I am not

6    going to cell with anyone, because I have safety concerns."  Id.  Villasenor informed petitioner

7    that petitioner would be receiving an RVR for this conduct.  Id.

8            Investigating Officer Searby took petitioner's statement which reads as follows:

9            I fear for my safety in a cell with other inmates and inmate
             population.  On 2-8-12, I was attacked by another inmate, in which
10           I informed prison staff that I fear for my safety. I was then removed
             from the inmate population for "safety concerns," and placed in
11           AD-SEG (CCR Section 3335 [a]), pending an investigation.  see
             CDC Form 114-D, dated 2-8-12.  The investigation was never
12           conducted.  I was also a victim of an in-cell assault, which was
             reported to prison staff and documented on a CDC Form 1882,
13           Initial Housing Review.  see CCR Section 3269 (b)-(d)(2).  I
             continue to inform prison staff of my "safety concerns," but they
14           have been disregarded.  see Classification Chrono 128-G, dated 4-
             4-13.  And I'm currently serving a determinate SHU term from
15           Refusing Assigned Housing. see CCR Section 3269 (c).

16   ECF No. 10-1, at 32.

17           At petitioner's disciplinary hearing, petitioner pled not guilty and requested that his

18   statement to investigating Officer Searby be submitted into evidence.  ECF No. 10-1, at 34.

19   Petitioner also requested Officer Villasenor as a witness.  Id.  The senior hearing officer asked

20   Officer Villasenor whether the other inmate was SNY and Officer Villasenor responded that

21   "[t]he inmates were compatible."  Id.  The senior hearing officer found petitioner guilty of

22   refusing to accept assigned housing, relying on the RVR prepared by Officer Villasenor and the

23   1882-B Double Cell Review signed by Lieutenant Konrad which noted that the inmates were

24   compatible.  Id.  As a result, a 90-day loss of credit forfeiture was assessed against petitioner.  Id.

25           Petitioner's first state habeas corpus petition, filed with the Sacramento County Superior

26   Court, alleged the disciplinary decision was not supported by the evidence and that the

27   investigative employee did not properly conduct his duties.  ECF No. 10-1, at 4–5.  In a reasoned

28   decision, the Sacramento Superior Court denied the petition.  Id. at 48.  Petitioner then filed a

1    habeas petition, alleging the same claims, with the California Court of Appeal, which was

2    summarily denied.  Id. at 54–71, 110.  Petitioner then filed a petition with the California Supreme

3    Court, which was also summarily denied.  Id. at 113–30, 168.  Petitioner filed his federal petition,

4    commencing this proceeding on October 24, 2014.  ECF No. 1.

5    III.    DISCUSSION

6           A.  Petitioner's Challenge to His May 2013 Disciplinary Conviction

7                1.  Applicable Law

8           A prisoner may challenge a prison disciplinary conviction by petition for writ of habeas

9    corpus if the conviction resulted in the loss of good time credits because credits impact the

10   duration of the prisoner's confinement.  Preiser v. Rodriguez, 411 U.S. 475, 487–88, 93 S. Ct.

11   1827 (1973) (suit seeking restoration of good time credits was "within the core of habeas corpus

12   in attacking the very duration of their physical confinement itself").  In dicta, the court in Preiser

13   noted that such a challenge is permissible even if restoration of the credits would not result in the

14   prisoner's immediate release from prison.  Id.

15          "Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a

16   disciplinary finding from his record if expungement is likely to accelerate the prisoner's

17   eligibility for parole."  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989); see also Docken v.

18   Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) ("[W]e understand Bostic's use of the term 'likely' to

19   identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not

20   fall squarely within, the 'core' challenges identified by the Preiser Court.")

21          While prisoners may not be wholly deprived of their constitutional rights, "there must be

22   mutual accommodation between institutional needs and objectives and the provisions of the

23   Constitution . . . ."  Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963 (1974).  "Prison

24   disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due

25   a defendant in such proceedings does not apply."  Id.  A prisoner's due process rights must be

26   accommodated to the "legitimate institutional needs" of a prison.  Bostic, 884 F.2d at 1269, citing

27   Superintendent v. Hill, 472 U.S. 445, 454–455, 105 S. Ct. 2768 [] (1984).  With respect to prison

28   disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written

3

notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff, 418 U.S. at 563–71. Confrontation and cross examination are not generally required. Id. at 567.

In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, 105 S. Ct. 2768, citing United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106, 47 S. Ct. 302, 71 L.Ed. 560 (1927). In Hill, the United States Supreme Court explained that this standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Id. Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455–56. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id.

The Hill Court provided justification for the less demanding standard:

> We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Id. at 456 (citations omitted).

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Id. at 457. Even where the evidence as in Hill "might be characterized as meager," if "the record is not so devoid of evidence that the

4

1   findings of the disciplinary board were without support or otherwise arbitrary," those findings

2   must be upheld.  Id.  Therefore, if the procedures outlined above are afforded to a prisoner, and

3   "some evidence" supports the decision of the hearing officer decision, the requirements of due

4   process are met.  Id. at 455; Bostic, 884 F.2d at 1269–70.

5          Also, this is a habeas corpus action.  As is the case with such actions, the review here is

6   not *de novo*.  Rather it is subject to the strictures of AEDPA, i.e., the merits review of the state

7   courts must be upheld unless it is unreasonable.  The Supreme Court has set forth the operative

8   standard for federal habeas review of state court decisions under AEDPA as follows:  "For

9   purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an

10  *incorrect* application of federal law.'"  Harrington v. Richter, 131 S.Ct. 770, 785 (2011), citing

11  Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000).  "A state court's determination

12  that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

13  disagree' on the correctness of the state court's decision."  Id. at 786, citing Yarborough v.

14  Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

15         Accordingly, "a habeas court must determine what arguments or theories supported or . .

16  could have supported[] the state court's decision; and then it must ask whether it is possible

17  fairminded jurists could disagree that those arguments or theories are inconsistent with the

18  holding in a prior decision of this Court."  Id.  "Evaluating whether a rule application was

19  unreasonable requires considering the rule's specificity.  The more general the rule, the more

20  leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the

21  stringency of this standard, which "stops short of imposing a complete bar of federal court

22  relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

23  cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

24  was unreasonable."  Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

25         Finally, pursuant to the presumptive "look-through" doctrine, the state decision reviewed

26  is the last reasoned decision, i.e., the Superior Court decision.  See Ylst v. Nunnemaker, 501 U.S.

27  797, 802, 111 S.Ct. 2590 (1991).

28  / / /

1          2.   Analysis

2              a.   Due Process Claims

3          Petitioner contends he was denied his due process rights under <u>Wolff</u> because the guilty

4    findings were not based on "some evidence."  He also contends the failure of the investigating

5    employee to perform his duties under <u>Wolff</u>, deprived him of a fair disciplinary hearing.  The

6    Sacramento County Superior Court considered these claims and denied them as follows:

7          **"Some evidence" challenge**

8          The standard for judicial review of a finding by a prison hearing
       officer is whether there is "some evidence" to support the hearing
9          officer's conclusion.  (*Superintendent v. Hill* (1985) 472 U.S. 445,
       456–457; *In re Powell* (1988) 45 Cal. 3d 894, 903–904.)  The
10         federal Constitution does not require evidence that logically
       precludes any conclusion but the one reached by the disciplinary
11         board.  (*Superintendent v. Hill*, *supra*, at p. 457.)  This standard is
       met if there was some evidence from which the conclusion of the
12         hearing officer could be deduced.  (*Superintendent v. Hill*, *supra*, at
       p. 455.)  Ascertaining whether this standard is satisfied does not
13         require examination of the entire record, independent assessment of
       the credibility of witnesses, or weighing of the evidence.  Instead,
14         the relevant question is whether there is any evidence in the record
       that could support the conclusion reached by the disciplinary board.
15         (*Superintendent v. Hill*, *supra*, at pp. 455–456.)  Even just one piece
       of evidence may be sufficient to meet the "some evidence"
16         requirement, if that evidence has sufficient indicia of reliability."
       (<u>*Bruce v. Yslt*</u> <u>(2003) 351 F.3d 1283, 1288</u>; <u>*Cato v. Rushen* (1987)</u>
17         <u>824 F.2d 703, 705</u> ["relevant question is whether there is *any*
       evidence in the record that *could* support the conclusion reached by
18         the disciplinary board" (citing <u>*Superintendent v. Hill* (1985) 472</u>
       <u>U.S. 445, 455–456</u>].)

19
       This standard was further clarified in *In re Zepeda* (2006) 141
20         Cal.App.4[th] 1493.  In *Zepeda*, the court reiterated that the standards
       that apply with respect to disciplinary proceedings are significantly
21         more lenient than those applied with respect to criminal
       convictions.  (*Id.* at p. 1499.)  "Implicit in the 'some evidence'
22         standard of review is the recognition that due process requirements
       imposed by the federal constitution do not authorize courts to
23         reverse prison disciplinary actions simply because, in the reviewing
       court's view, there is a realistic possibility the prisoner being
24         disciplined is not guilty of the charged infraction."  (*Id.* at p. 1498.)
       "Thus, to withstand court scrutiny for federal due process purposes,
25         there is simply no requirement that the evidence 'logically
       precludes any conclusion but the one reached by the disciplinary
26         [official].' … Rather, all that is required is '"some evidence from
       which the conclusion of the [official] could be deduced.""  (*In re
27         Zepeda*, *supra*, at p. 1499, citing to *Superintendent v. Hill*, *supra*, at
       p. 456.)[N.1]

28

                                         6

[N.1]  *In re Zepeda*, *supra*, three razor blades were found in a cup on a shelf easily accessible by both Zepeda and his cellmate.   Zepeda was one of only two inmates who occupied the cell and Zepeda had been housed in the cell for several days prior to the discovery of the razor blades.   The plastic casings for the razor blades were found in the cell, indicating that the razor blades had been altered in that location.   This was found to constitute some evidence to support the prison official's determination that Zepeda possessed the three razor blades found in his cell, despite the cellmate's acknowledgement of ownership and Zepeda's own claim of innocence.

Inmates are prohibited from refusing to accept a housing assignment such as, but not limited to, an integrated housing assignment or a double cell assignment, when case factors do not preclude such.  (Cal. Code Regs., tit. 15, § 3005, subd. (c).)

According to documents attached to the petition, Mr. Larkin had been cleared for double cell housing at the time he was asked to accept a cellmate on May 2, 2013.   Both he and the intended cellmate were determined to have similar safety concerns and to be compatible for double-celling.  Accordingly, petitioner's refusal to accept the intended cellmate constituted a violation of CCR section 3005 (c).  His claim that the evidence presented at the hearing was insufficient to support the finding of guilt is meritless.   In any event, petitioner's assertion that he was originally placed in Ad. Seg. out of concern for his safety, which is not supported by the attached documentation, is irrelevant to his refusal to accept a cellmate in this instance.

**Investigative Employee**

An IE shall be assigned to assist in the investigation of matters pertaining to a disciplinary action when the chief disciplinary officer determines that one of the following criteria are met: 1) the complexity of the issues require further investigation; 2) the housing status makes it unlikely the charged inmate can collect and present the evidence necessary for an adequate presentation of a defense; or 3) a determination has been made that additional information is necessary for a fair hearing.  (Cal. Code Regs., tit. 15, § 3315, subd. (d).)  The IE acts as a representative of the official who will conduct the hearing rather than as a representative of the inmate, and is tasked with doing the following for the SHO: interviewing the charged inmate, gathering information, questioning all staff and inmates who may have relevant information, and screening prospective witnesses.  (Cal. Code Reg., tit. 15, § 3318, subds. (a)(1) and (a)(3).)  Once the investigation is completed, the IE submits a written report to the SHO which includes witness statements ad a summary of the information collected specific to the violation charged.  (Cal. Code Regs., tit. 15, § 3318, subd. (a)(1)(E).  A copy of this report is provided to the inmate no less than 24 hours prior to the hearing.  (Cal. Code Regs., tit. 15, § 3318, subd. (a)(2).)

7

Petitioner's claim that the IE failed to do a thorough job in his investigation and that this alleged failure prevented him from having a fair hearing is without merit. Of the two documents at issue here, a CDCR 114-D Ad. Seg. Unit Placement Notice dated February 8, 2012, and a CDCR 128-G classification chrono dated April 4, 2013, the IE did, in fact obtain the first one. While the IE stated that he was unable to locate a CDCR 128-G chrono dated April 4, 2013, there is no indication that this document even exists as it was not found in petitioner's central file.[N.2] However, the IE did located the CDCR 128-G classification chrono dated just six days later, on April 10, 2013, which stated that petitioner had be cleared for double cell housing with inmates with like case factors. As the CDCR 128-G classification was issued after the alleged "missing" chrono, yet before the date of the 115 RVR, the decisions reflected in the April 10, 2013 chrono would have superseded any conflicting decisions noted in the "missing" chrono. Therefore any CDCR 128-G classification chrono which might have been issued on April 4, 2013, is irrelevant with respect to the issue of double-celling.

> [N.2] As inmates are issued a copy of all CDCR 128-G classification chronos documenting ICC action, petitioner should have been able to produce his own at the hearing and with this petition. (Cal. Code Regs., tit. 15, § 3375, subd. (g).)

ECF No. 10-1, at 49–51.

As an initial matter, petitioner does not appear to contend he was not afforded the minimum procedural protections required under Wolff. Nonetheless, the proceedings here met those minimum procedural requirements. Prior to the hearing, petitioner received copies of the RVR and the investigative employee's report. See ECF No. 1, at 29–32. He was given the opportunity to call witnesses and present documentary evidence in his defense. At petitioner's request, the senior hearing officer questioned Officer Villasenor at the disciplinary hearing and petitioner submitted a written statement through the investigating employee. ECF No. 1, at 31. To the extent petitioner claims he was not afforded the procedural protections required under Wolff, that claim should be denied.

The brunt of petitioner's argument is, as he presented them to the state court, that the disciplinary decision was not based on "some evidence" and the failure of the investigative employee to perform his duties as required under Wolff violated petitioner's right to a fair hearing. ECF No. 1 at 9. There was "some evidence" to support the decision rendered on the disciplinary charge, in the form of the investigative employee's report, the RVR, and the Double-

1    Cell Review.  As to petitioner's claim that the investigative employee failed to perform his duties

2    under Wolff, there is no right to a thorough investigative report or even an investigation, nor even

3    a right to assignment of an investigative employee, which was provided to petitioner in this case.

4    See Fuqua v. Swarthout, 2013 WL 5493373, *5 (E.D. Cal. Oct.2, 2013) (no right to investigative

5    employee); Pickett v. Williams, 2011 WL 4913573, *4 (D. Or. Aug.23, 2011) (no right to

6    investigation).  As such, these claims should be denied.

7            Under the circumstances presented here, the decision of the state courts is not contrary to,

8    or an unreasonable application of, the federal principles set forth above.  Accordingly, petitioner

9    is not entitled relief.

10                                b.  Actual Innocence

11            Petitioner contends he is actually innocent under Schlup v. Delo, 513 U.S. 298 (1995).

12   However the undersigned construes petitioner's claim as a Herrera v. Collins, 506 U.S. 390, 113

13   S.Ct. 853, 122 L.Ed.2d 203 (1993) claim of innocence instead.  The Supreme Court explained the

14   difference between a Schlup claim and a Herrera claim as follows:

15              [I]t is important to the explain the difference between Schlup's
16              claim of actual innocence and the claim of actual innocence
                 asserted in Herrera v. Collins, 506 U.S. 390, 113 S.Ct. 853, 122
17              L.Ed.2d 203 (1993).  In Herrera, the petitioner advanced his claim
                 of innocence to support a novel substantive constitutional claim,
18              namely that the execution of an innocent person would violate the
                 Eighth Amendment.[]  Under petitioner's theory in Herrera, even if
19              the proceedings that had resulted in his conviction and sentence
                 were entirely fair and error free, his innocence would render his
20              execution a "constitutionally intolerable event."

21              Schlup's claim of innocence on the other hand, is procedural, rather
                 than substantive.  His constitutional claims are based not on his
22              innocence, but rather on his contention that the ineffectiveness of
                 his counsel . . . and the withholding of evidence . . . denied him the
23              full panoply of protections afforded to criminal defendants by the
                 Constitution.  Schlup, however, faces procedural obstacles that he
24              must overcome before a federal court may address the merits of
                 those constitutional claims.

25                                         ***

26              Schlup's claim thus differs in at least two important ways from that
                 presented in Herrera.  First, Schlup's claim of innocence does not
27              by itself provide a basis for relief.  Instead, his claim for relief
                 depends critically on the validity of his *Strickland* and *Brady*
28              claims.       Schlup's claim of innocence is thus not itself a

constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.

<u>Schlup</u>, 513 U.S. at 313–15.  In this instance, there is no procedural bar to reviewing the merits of petitioner's habeas petition.  As such, the undersigned considers the viability of petitioner's <u>Herrera</u> actual innocence claim.

The standards required to prove a <u>Herrera</u> actual innocence set a high hurdle for this petitioner.  In <u>Herrera</u>, a majority of the Supreme Court assumed, without deciding, that a freestanding claim of actual innocence is cognizable under federal law.  In this regard, the court observed that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."  506 U.S. at 417.  A different majority of the Supreme Court explicitly held that a freestanding claim of actual innocence is cognizable in a federal habeas proceeding.  <u>Compare</u> 506 U.S. at 417 <u>with</u> 506 U.S. at 419, 430–37; <u>see also</u> <u>Jackson v. Calderon</u>, 211 F.3d 1148, 1165 (9th Cir. 2000) (noting that a majority of the Justices in <u>Herrera</u> would have found a freestanding claim of actual innocence).  Although the Supreme Court did not specify the standard applicable to this type of "innocence" claim, it noted that the threshold would be "extraordinarily high" and that the showing would have to be "truly persuasive."  <u>Herrera</u>, 506 U.S. at 417.  More recently, the Supreme Court declined to resolve whether federal courts may entertain independent claims of actual innocence but concluded that the petitioner's showing of innocence in the case before it fell short of the threshold suggested in <u>Herrera</u>.  <u>House v. Bell</u>, 547 U.S. 518, 554–51, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).  Finally, the Supreme Court has recently once again assumed, without deciding, that a federal constitutional right to be released upon proof of "actual innocence" exists.  <u>District Attorney's Office for Third Judicial Dist. v. Osborne</u>, 557 U.S. 52, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009).  In doing so, the Supreme Court noted that it is an "open question" whether a freestanding claim of actual innocence exists and that the court has "struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."  557 U.S. at 71.

10

1        The Ninth Circuit Court of Appeals has likewise assumed that freestanding innocence

2    claims are cognizable in both capital and non-capital cases and has also articulated a minimum

3    standard of proof in order for a habeas petitioner to prevail on such a claim.  Carriger v. Stewart,

4    132 F.3d 463, 476 (9th Cir.1997) (en banc).  Under that standard "[a] habeas petitioner asserting a

5    freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must

6    affirmatively prove that he is probably innocent."  Id. at 476–77; see also Jackson, 211 F.3d at

7    1165.  The petitioner's burden in such a case is "extraordinarily high" and requires a showing that

8    is "truly persuasive."  Carriger, 132 F.3d at 476 (quoting Herrera, 506 U.S. at 417).

9        Thus, at minimum, petitioner must show that the new evidence "would be sufficient to

10    establish by clear and convincing evidence that ... no reasonable factfinder would have found

11    [him] guilty of the underlying offense."  West v. Ryan, 652 F.3d 1071, 1081 (9th Cir. 2011)

12    (internal quotations and citations omitted).  Petitioner cannot meet that burden.  In support of his

13    actual innocence argument, petitioner shows that he made several complaints to prison officials

14    regarding his "safety concerns."  However, at no point does he claim innocence of the underlying

15    offense—the disciplinary conviction arising from the May 2013 RVR.  See ECF No. 1, at 15–17.

16    Petitioner does not argue that he actually complied with Officer Villasenor's order that petitioner

17    accept a cellmate.  Instead, he appears to argue that his subsequent, yet successful appeal of his

18    status as an inmate who can be placed in a double cell reduces his culpability.  Reduced

19    culpability is not Herrera actual innocence.  See Carriger, 132 F.3d at 476 (actual innocence

20    requires affirmative prove of innocence as opposed to casting doubt on the sufficiency of the

21    evidence).

22        One can assume that at some point, a prisoner has a substantive due process right to

23    protect himself from situations which present a grave and imminent probability of death or great

24    bodily injury, even if prison officials are the ones unreasonably ordering the prisoner into such a

25    situation. See generally,  Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028 (1990) (substantive

26    due process right not to have psychotropic drugs administered unless certain preconditions are

27    met.)  See also, Dunn v. Swarthout, 2014 WL 3529915 (E.D. Cal. 2014) (exploring the

28    substantive due process right to self-defense by a prisoner). However, wherever the borderline

1   line for legitimate self-defense should be drawn in the prison context, the situation here falls far

2   short of that line.  Petitioner here describes no more than a general fear for his safety based on

3   prison culture and perhaps some bad experiences in the past.

4          As such, petitioner's actual innocence claim should be denied.

5          B.  Motion to Amend the Petition

6          On October 27, 2014, petitioner filed another petition for writ of habeas corpus

7   challenging his disciplinary conviction arising out of the May 2013 RVR.  That petition

8   commenced a separate case entitled Larkin v. Davey, No. 2:14-cv-2505-EFB (E.D. Cal.).  On

9   March 10, 2015, Magistrate Judge Brennan ordered that petitioner's October 27, 2014 petition be

10  construed as a motion to amend the original petition in the instant case.  ECF No. 15; see also

11  Woods v. Carey, 525 F.3d 886, 888–90 (9th Cir. 2008) ("[W]here a new pro se petition is filed

12  before the adjudication of a prior petition is complete, the new petition should be construed as a

13  motion to amend the pending petition rather than as a successive application.").  As a result,

14  petitioner's motion to amend (ECF No. 16) is before this court.

15         The decision to permit or deny a motion for leave to amend after an answer has been filed

16  rests within the sound discretion of the trial court.  See DCD Programs, Ltd. v. Leighton, 833

17  F.2d 183, 185–86 (9th Cir. 1987) (citing United States v. Webb, 655 F.2d 977, 979 (9th

18  Cir.1981)).  In deciding whether to grant leave to amend, courts generally consider the following

19  factors: undue delay, bad faith by the moving party, prejudice to the opposing party, futility of

20  amendment, and whether the party has previously amended his pleadings.  See Foman v. Davis,

21  371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Bonin v. Calderon, 59 F.3d 815, 845 (9th

22  Cir. 1995); DCD Programs, Ltd., 833 F.2d at 186 & n. 3.

23         In the present case, the undersigned denies petitioner's motion to amend because the

24  proposed amendment would be futile.  The proposed first amended petition concerns the same

25  May 2013 RVR upon which the original petition was based.  It includes new facts regarding

26  petitioner's June 12, 2013 hearing before the Institutional Classification Committee ("ICC"), after

27  which the ICC imposed upon petitioner a nine-month term in the security housing unit.  ECF No.

28  16, at 8.  This nine-month term was a consequence of petitioner's disciplinary conviction arising

1   from the May 2013 RVR.  ECF No. 16-1, at 15.  Because these additional allegations relate to the

2   consequences of petitioner's disciplinary conviction, they do not raise a separate constitutional

3   claim.  The underlying disciplinary conviction and related proceedings complied with the

4   requirements of <u>Wolff</u> and were based on "some evidence."  Petitioner's additional allegations

5   regarding the consequences arising from that disciplinary conviction would not change the result.

6   Amendment would be futile.  Petitioner's motion to amend is denied.

7   CONCLUSION

8        For the reasons stated herein, IT IS ORDERED that petitioner's motion for leave to

9   amend his petition denied.

10       IT IS HEREBY RECOMMENDED that:

11       1.  Petitioner's application for a writ of habeas corpus be denied; and

12       2.  The District Court decline to issue a certificate of appealability.

13       These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18   shall be served and filed within fourteen days after service of the objections.  Failure to file

19   objections within the specified time may waive the right to appeal the District Court's order.

20   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21   Dated: March 26, 2015

22                                   /s/ Gregory G. Hollows

23                              UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28   GGH:016/Larkin2497.hc

                                          13